Aaron TACY, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 20A04–9311–PC–413.

Court of Appeals of Indiana,
Fourth District.

Oct. 13, 1994.

Transfer Denied Nov. 23, 1994.

---

By: _____

Management Representative

Susan K. Carpenter, Public Defender, Kenneth L. Bird, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

## STATEMENT OF THE CASE

RATLIFF, Senior Judge.

In 1981, Aaron Tacy was convicted of attempted murder, theft, and burglary, resulting in concurrent sentences of thirty-four (34), two (2), and twelve (12) years. His convictions were affirmed by our Supreme Court on direct appeal. *Tacy v. State* (1983), Ind., 452 N.E.2d 977. Tacy now appeals from the denial of his Petition for Post–Conviction Relief. We affirm in part, and reverse in part.

## ISSUES

I. Did the trial court's instructions on the offense of attempted murder constitute fun-

damental error because they did not instruct the jury on the element of specific intent?

II. Is the issue whether the juvenile court acquired jurisdiction over Tacy *res judicata?*

III. Was Tacy denied his constitutional right to effective assistance of counsel at trial and on appeal?

## FACTS

As previously described by our supreme court, the following events gave rise to Tacy's charges and convictions:

"At about 9:30 P.M. on April 9, 1980, two officers from the Elkhart Sheriff's Department were dispatched to an Elkhart grocery store parking lot to investigate a truck. The officers found [Tacy] sitting in the truck. While one of the officers was questioning [Tacy] the other ran a radio check on the truck and was told it had been reported stolen. In the meantime a third officer arrived on the scene. While [Tacy] was on the ground and the officers were attempting to handcuff him, he managed to withdraw a concealed handgun and fire two shots. One shot struck one of the officers on the shoulder but caused no injury because the officer was wearing a bulletproof vest. [Tacy] fled into the grocery store. One of the officers fired twice at him as he was running. Both shots struck [Tacy] in the arm. He soon surrendered along with a juvenile companion who had been inside the store during the incident.

At [Tacy's] trial the companion, a cousin named Alan Stamper, testified the boys had run away from home three or four days earlier. He related that during this time the boys had stolen a motorcycle and broken into a residence. They spent a total of two nights and a day in the residence consuming food and liquor they found in the house, stole some guns and other items of personal property, and vandalized the house as well. For a time they separated and Stamper stole the truck from which [Tacy] was apprehended. They had spent all day in the grocery store parking lot on April 9, having driven there in the morning to buy cigarettes and being

forced to stay because the truck would not restart."

*Id.* at 979.

Tacy filed a Petition for Post–Conviction Relief in 1986. He amended the petition on June 16, 1992, and the trial court heard it on September 11, 1992. Both Tacy's trial and appellate counsel testified at the hearing. The court denied Tacy's petition, and he now appeals.

## DECISION

### I. *Jury Instructions*

Tacy argues that the trial court's instructions on the offense of attempted murder constituted fundamental error because they did not instruct the jury on the element of specific intent. The State argues that Tacy has waived this issue because he could have raised it on direct appeal and failed to do so. We agree with Tacy.

In general, issues which could have been raised on direct appeal are not available for review in post-conviction proceedings. *Weatherford v. State* (1993), Ind., 619 N.E.2d 915, 917, *reh'g denied.* However, a claim of fundamental error can be raised in a post-conviction petition regardless of whether such issue was waived in the direct appeal process. *Haggejos v. State* (1986), Ind., 493 N.E.2d 448, 450. Fundamental error is blatant error which, if not rectified, would deny the petitioner fundamental due process. *Id.* Our supreme court has held that failure to instruct the jury on the element of specific intent in the crime of attempted murder is fundamental error. *Smith v. State* (1984), Ind., 459 N.E.2d 355, 358.

In *Smith,* the trial court instructed the jury as follows:

You are instructed that the essential elements of the crime of attempted Murder which the State of Indiana must prove beyond a reasonable doubt are the following: 1) That the Defendant [sic] knowingly, 2) Engaged in conduct that constituted a substantial step toward the commission of Murder.

*Id.* at 357. Smith argued that the instruction on attempted murder failed to include an essential element of the offense, namely, that he must have had the specific intent to commit murder in order to be found guilty of

attempted murder. The State argued that the instructions, considered as a whole, did inform the jury of the specific intent requirement. Our supreme court agreed with Smith, found fundamental error, and stated as follows:

"Nowhere in these instructions ... is there any statement to the effect that if the Defendant is to be found guilty of attempted murder, there must first be a finding that when he engaged in the conduct proscribed, he intended to kill [the victim]. Nor did any of the instructions modify, explain, or nullify the erroneous instruction which was given. Thus, we are left with instructions which would lead the jury to believe that the Defendant could be convicted of attempted murder if he knowingly engaged in conduct which constituted a substantial step toward the commission of murder. Although one may be guilty of murder, under our statute, without entertaining a specific intent to kill the victim, he cannot be guilty of attempted murder without entertaining such intent. The attempt must be to effect the proscribed result and not merely to engage in proscribed conduct. An instruction which correctly sets forth the elements of attempted murder requires an explanation that the act must have been done with the specific intent to kill. Here, the instruction does not, and the jury might infer from the instructions given that they could find the Defendant guilty of attempted murder even if there was no intent to kill the victim at the time he acted."

*Id.* at 358.

Our supreme court reaffirmed *Smith* in *Spradlin v. State* (1991), Ind., 569 N.E.2d 948. In *Spradlin*, the trial court instructed the jury as follows:

"To convict the defendants, the State must have proved each of the following elements: the defendants 1) knowingly or intentionally, 2) strike, stab and cut the body of Robert Grubbs, 3) that the conduct

was a substantial step toward the commission of the crime of murder."

*Id.* at 950–51.

On the Spradlins' direct appeal, the supreme court found that the instructions did not include a requirement that the State prove that, "at the time that the [Spradlins] struck, stabbed and cut the victims, [they] intended to kill such victims." *Id.* at 951. The court further stated as follows:

"[W]e hold that an instruction which purports to set forth the elements which must be proven in order to convict of the crime of attempted murder must inform the jury that the State must prove beyond a reasonable doubt that the defendant, with intent to kill the victim, engaged in conduct which was a substantial step toward such killing." [1]

■ In the instant case, the trial court instructed the jury on attempted murder as follows:

The crime of Attempt is defined by statute as follows: A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step towards the commission of the crime. To convict the defendant the State must have proved each of the following elements: the defendant 1) knowingly or intentionally, 2) engaged in conduct which created a substantial risk of death to one Gerald C. Webb, 3) that the conduct was a substantial step toward the commission of the crime of Murder ... (Record, at 866–67).

Applying the *Spradlin* requirements to Tacy's instructions,[2] we find that the instructions failed to advise the jury that in order to convict Tacy of the crime, the State had to prove beyond a reasonable doubt that Tacy intended to kill Webb. Rather, the instructions advised the jury that they could convict Tacy for attempted murder if Tacy knowingly or intentionally engaged in conduct which created a substantial risk of death to Officer

---

1. In *Hill v. State*, (1993), Ind., 615 N.E.2d 97, 99, the supreme court reaffirmed *Spradlin*, and stated as follows:

"The requirements set out in *Spradlin* are those which the trial court should apply in instructing a jury, and which we will apply

when we review an instruction on attempted murder."

2. The State argues that *Spradlin* should not be applied to cases on collateral review. We disagree. *See Brown v. State* (1992), Ind.App., 587 N.E.2d 693, 698–99.

Webb, and which was a substantial step toward the commission of murder. Having determined that the instructions were erroneous, we must now determine whether the instructions constituted fundamental error.

Several cases have addressed what constitutes a sufficient instruction on the element of intent to kill in attempted murder, and whether an error in the instructions is fundamental error. In *Brown, supra*, 587 N.E.2d at 693, we reviewed prior opinions from the Indiana Supreme Court on whether or not the error was fundamental and stated as follows:

"These cases suggest that fundamental error results 1) when the jury instructions on attempted murder completely fail to refer to the element of intent to kill; and 2) when the instructions leave the impression that intent to engage in the conduct leading to the risk of death alone is sufficient to convict on a charge of attempted murder. On the other hand, instructions which imperfectly instruct on the element of intent to kill but which do not affirmatively mislead the jury are erroneous but not fundamental error, and are therefore subject to waiver. An instruction which refers to the element of intent by stating that the defendant must 'attempt to kill', rather than 'intend to kill', the victim appears to be an example of an imperfect but not fundamentally erroneous instruction."

*Id.* at 696.

In *Brown*, a post-conviction relief case, the trial court had instructed the jury as follows:

"Murder; A person who 1) knowingly kills another human being commits murder, a felony. [T]he elements of this crime are that the defendant must: 1) knowingly 2) kill 3) another human being."

Attempt; A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted. However, an attempt to commit murder is a class A felony. To convict the defendant the state must prove each of the following elements: The Defendant 1) *knowingly* 2) *engaged in*

*conduct* that constituted a substantial step to accomplish 3) the crime of Murder." (emphasis added).

A person *engages in conduct* 'knowingly' if, *when he engages in the conduct*, he is aware of a high probability that he is doing so. You are instructed that knowledge may be inferred from the facts or circumstances presented in each case. (emphasis added).

*Id.* at 697. We found that the instructions "clearly and erroneously provide that the required intent is intent to engage in the conduct rather than intent to accomplish the result. Therefore, the case falls squarely within *Smith*'s fundamental error rule...." *Id.*

Here, Tacy's attempted murder instructions do not refer to the element of intent to kill, and they leave the impression that intent to engage in the conduct leading to the risk of death alone is sufficient to convict on a charge of attempted murder. We thus find that the attempted murder instructions constitute fundamental error.

We note that we considered recently this issue in *Wilson v. State* (1994), Ind.App., 635 N.E.2d 1109. In *Wilson*, the trial court instructed the jury as follows:

"Instruction 15—A person attempts to commit a crime when he knowingly or intentionally engages in conduct that constitutes a substantial step toward the commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted. The crime of murder is defined by statute as follows: A person who knowingly or intentionally kills another human being commits murder.

To convict the defendant of attempted murder, the State must have proved each of the following elements: The defendant James L. Wilson 1) knowingly or intentionally 2) engaged in conduct by knowingly shooting a deadly weapon; to-wit a handgun at and against the person of Frank Dewey Poskon [sic] 3) which conduct constitutes a substantial step toward the knowing or intentional killing of another human being. If the State failed to prove each of these elements beyond a reasonable doubt, the defendant should be found

not guilty. If the State did prove each of the elements beyond a reasonable doubt, then you should find the defendant guilty of attempted murder, a class A felony."

We found that although the trial court had erred because it failed to instruct the jury on the specific intent element of attempted murder, there was no fundamental error when considering the instructions as a whole. *Id.* at 1114. For example, the information alleged in pertinent part that Wilson "did knowingly and intentionally attempt to kill another human being." We noted that instructions which use the terms "attempt to kill" rather than "intend to kill" do not constitute fundamental error.[3] *Id.* In addition, we noted that the trial court had also instructed the jury as follows:

"The intent to kill can be found from the acts, declarations, and conduct of the defendant at or just immediately before the commission of the offense, and from the character of the weapon used."

*Id.* at 1114–15.

We concluded that the jury was "imperfectly instructed on the intent to kill element, but not affirmatively misled; therefore, the giving of instruction Number 15 did not constitute fundamental error, and Wilson has waived any objection to that instruction." *Id.* at 1115. We note that the instant case is distinguishable from *Wilson.* Although the instructions are nearly identical, Tacy's indictment did not include the "intentionally attempt to kill" language.[4] In addition, there was no separate instruction covering intent to kill.[5] We thus find that the jury was affirmatively misled and the instructions on attempted murder constituted fundamental error. As a result, we vacate the attempted murder conviction and remand.

Having reached this conclusion, we need not consider Tacy's assertion of ineffective assistance of trial and appellate counsel upon this issue. In addition, we need only consider the remaining issues to the extent that they are relevant to Tacy's convictions for theft and burglary. *See Brown* at 699.

## II. *Juvenile Court Jurisdiction*

■ In 1980, at the time of the crime, Tacy was 14 years old. The prosecutor requested authorization to file a Delinquency Petition against Tacy, and the Circuit Court

---

**3.** In *Jackson v. State* (1991), Ind., 575 N.E.2d 617, our Supreme court stated that there was no fundamental error where the instructions advised the jury that the State had to prove that the defendant "did knowingly ... attempt to commit the crime of murder *by attempting to kill* [the victim]", and the issue at trial was the gunman's identity not his mens rea. (emphasis added). *Id.* at 621. We note that the instant case is distinguishable from *Jackson* because Tacy's indictment, which was read to the jury, stated that the State had to prove that Tacy did knowingly attempt to commit the crime of murder *by knowingly creating a substantial risk of death* to [the victim]", and Tacy's mens rea was a material issue at trial. (emphasis added).

**4.** Tacy's indictment states as follows:

The undersigned affiant swears that on or about the 9th day of April, 1980, at the County of Elkhart and State of Indiana, one Aaron Tacy did then and there unlawfully and knowingly attempt to commit the crime of Murder by knowingly creating a substantial risk of death to one Gerald C. Webb, a human being and a uniformed officer of the Elkhart Sheriff's Department, by aiming, pointing and discharging a dangerous weapon, to-wit: a pistol, which the said Aaron Tacy then and there held in his hands and which pistol was then and there loaded with gunpowder and leaden ball

and the said Aaron Tacy did then and there discharge said pistol in and upon the person of said Gerald C. Webb, then and thereby shooting the said Gerald C. Webb in the chest, all of which conduct constitutes a substantial step towards the commission of said crime of Murder by knowingly killing another human being contrary to the form of Burns Indiana Statutes Annotated, Indiana Code Section 35–41–5–1 (1977) and Indiana Code Section 35–42–1–1 (1977); contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Indiana. (Record, at 864–65).

**5.** The additional instructions which were given to the jury include the following:
The crime of murder is defined by statute as follows: A person who knowingly or intentionally kills another human being commits Murder, a Felony. To convict the defendant the State must prove each of the following elements: the defendant 1) knowingly or intentionally, 2) killed, 3) another human being.... (Record, at 866). Culpability is defined as follows: a person who engages in conduct intentionally if, when he engages in the conduct, it is his conscious objective to do so. A person engages in conduct knowingly if, when he engages in the conduct, he is aware of a high probability that he is doing so. (Record, at 869–70).

granted it on April 28, 1980. The prosecutor then moved the juvenile court to waive jurisdiction to adult court, and the juvenile court granted the motion.[6] On direct appeal, Tacy argued that the juvenile court had never acquired jurisdiction over him, "hence there could be no waiver of jurisdiction to adult criminal court, and hence the convictions in the latter court were obtained by a court with no jurisdiction over him." *Tacy,* 452 N.E.2d at 980. Specifically, Tacy argued that the juvenile court did not have jurisdiction over him because the court had failed to comply with Ind.Code 31–6–4–7 which, at that time, stated in relevant part:

(a) Any person may give an intake officer written information indicating that a child is a delinquent child. If the intake officer has reason to believe the child has committed a delinquent act, he shall make a preliminary inquiry to determine whether the interests of the public or of the child require further action.

(b) A preliminary inquiry is an informal investigation into the facts and circumstances reported to the court. Whenever practicable, it should include information on the child's background, current status, and school performance.

(e) The intake officer shall send the prosecutor a copy of the preliminary inquiry in all cases involving allegations that the child committed an act that would be a crime if committed by an adult.... He shall recommend whether to file a petition, informally adjust the case, refer the child to another agency, or dismiss the case....

(f) The person who represents the interests of the state and who receives the preliminary inquiry and recommendations shall decide whether to request authorization to file a petition. This decision is final only as to the office of the person making it.

In interpreting the statute, we have held that if the juvenile court fails to conduct a preliminary inquiry pursuant to the statute, that court does not have jurisdiction, and any waiver of a juvenile to adult criminal court is invalid. *Jackson v. State* (1978), 177 Ind. App. 193, 378 N.E.2d 921, 923; *Duty v. State*

(1976), 169 Ind.App. 621, 349 N.E.2d 729, 731.

In considering Tacy's direct appeal, our supreme court noted that because a preliminary inquiry is required before a delinquency petition can be filed, the juvenile court must have conducted a preliminary inquiry on Tacy prior to April 28, 1980. After considering the evidence, the Supreme Court stated as follows:

"The record in this case shows the preliminary inquiry was conducted prior to the filing of the petition alleging delinquency. In the April 28, 1980, order of the juvenile court authorizing the filing of the petition, we find the following:
'A written information signed by Elk. Co. Deputy Sheriff's Officer's heretofore filed with an Intake Officer of this Court, Rosamund E. Funk (Caseworker) and said Intake Officer's written report of preliminary inquiry are now filed and made a part of this record. The Court having considered the preliminary inquiry ...'
We hold that there was no lack of jurisdiction over appellant in the juvenile court."
*Tacy,* 452 N.E.2d at 981.

Tacy now argues that a preliminary inquiry was never conducted. The State argues that the issue is *res judicata.* We agree with the State.

Tacy's brief states as follows:
"In its opinion, the Indiana Supreme Court concluded that the Juvenile Court had jurisdiction over Tacy because there was a report of preliminary inquiry. Tacy sought to show during the post-conviction proceedings that the assumption underlying the Supreme Court's opinion was not true, that there had not been a report of preliminary inquiry in Tacy's case."
(Tacy's Brief, p. 13).

We note that the supreme court did not assume that a preliminary inquiry had been done. Rather, the supreme court stated specifically that the record showed that a preliminary inquiry had been conducted before the delinquency petition was filed. Because this issue was decided in Tacy's direct appeal, it is res judicata, and it is not subject to

---

**6.** Tacy brought an interlocutory appeal pursuant to Ind.Appellate Rule 4(B)(5) challenging the waiver order among other things. This court

affirmed the waiver order in *Matter of Tacy* (1981), Ind.App., 427 N.E.2d 919.

consideration for post-conviction relief. *Grey v. State* (1990), Ind., 553 N.E.2d 1196, 1199–1200, *reh'g denied; French v. State* (1989), Ind., 547 N.E.2d 1084, 1087. The trial court did not err in failing to grant Tacy post-conviction relief on this issue.

### III. *Ineffective Assistance of Counsel*

Tacy argues that both trial and appellate counsel were ineffective. He contends that:

[T]rial and appellate counsel failed adequately to show that a report of preliminary inquiry was never prepared for, filed in, or made a part of the record of this case. As a result, the Indiana Supreme Court assumed that such a report existed. Consequently, the court denied relief to Tacy. If counsel had made the necessary showing, the court would have granted relief. (Tacy's Brief, p. 30).

Ineffective assistance of counsel claims are judged by the standard set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *Lawrence v. State* (1984), Ind., 464 N.E.2d 1291, 1294. The effectiveness of appellate counsel is judged by the same standard as is applied to trial counsel. *Mato v. State* (1985), Ind., 478 N.E.2d 57, 62. A claim of ineffective assistance, as violating the Sixth Amendment of the U.S. Constitution, is subject to a two-part test. In order to prevail, Tacy must show that 1) his counsel's performance fell below an objective standard of reasonableness, and 2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Mott v. State* (1989), Ind., 547 N.E.2d 261, 263.

Tacy's claim against his trial counsel is waived because he could have raised this issue on appeal and failed to do so. *Weatherford, supra.* Tacy's claim against his appellate counsel must fail because Tacy has failed to make an adequate showing that his counsel's performance fell below an objective standard of reasonableness, and was deficient. On direct appeal, Tacy's appellate counsel questioned the existence of a preliminary inquiry. The supreme court found that a preliminary inquiry had been completed and affirmed the juvenile court's jurisdiction. Tacy has failed to identify what more his appellate counsel could have done. He has pointed to no additional arguments which appellate counsel could have made to the supreme court which would have led that court to rule in his favor. The trial court did not err in failing to grant Tacy post-conviction relief on this issue.

We vacate the attempted murder conviction and remand. In all other respects we affirm.

SHARPNACK, C.J., concurring.

CHEZEM, J., concurring in result.